UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

MARIE BUSCEMI, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

LOFT, LLC, an Illinois company, and THOMAS MARCY, an Illinois individual,

Defendants.

NO.

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

This case addresses a disturbing trend whereby real estate brokers are training their realtors to cold call consumers without consent, violating the Telephone Consumer Protection Act. Plaintiff Marie Buscemi ("Buscemi") brings this Class Action Complaint and Demand for Jury Trial against Defendant Loft LLC ("Re/Max NEXT" or "Defendant Re/Max NEXT") and Defendant Thomas Marcy ("Marcy" or "Defendant Marcy") to stop the Defendants from violating the Telephone Consumer Protection Act by placing solicitation calls *without consent* to consumers using a pre-recorded voice message. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. The Plaintiff is a resident of Chicago, Illinois.

2. Defendant Re/Max NEXT is an Illinois company incorporated in Illinois and headquartered in Chicago, Illinois. Defendant Re/Max NEXT conducts business throughout this District.

3. Defendant Marcy is a Re/Max NEXT realtor located in Chicago, Illinois.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants' wrongful conduct of calling the

Plaintiff was directed to and received by Plaintiff in this District on Plaintiff's Illinois area code cell phone number.

**INTRODUCTION**

5. As the Supreme Court explained at the end of its last term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.9 billion robocalls were placed in March 2021 alone, at a rate of 159.4 million per day. www.robocallindex.com (last visited April 7, 2021).

10. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

11. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection,

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

12. In recent years a troubling trend has surfaced in the real estate industry where real estate agents are cold calling consumers soliciting their services without their consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

13. This trend has resulted in consumers being bombarded by unsolicited real estate solicitation calls without their consent and in violation of the TCPA.

**COMMON ALLEGATIONS**

14. Defendant Loft, LLC does business as Re/Max NEXT.

15. Defendant Marcy is a Re/Max NEXT real estate salesperson as indicated in the picture below.

[3]

16. Re/Max NEXT is actively managed by Mike Opyd and Alejandro Trujillo.[4]

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://www.facebook.com/MikeOpyd

[4] https://www.facebook.com/MeetRemaxNext/

17. Opyd and Trujillo are personally involved in the training and development of Re/Max NEXT real estate salespersons, offering a variety of courses and programs for agents to take.[5]

18. Re/Max NEXT places great emphasis on prospecting to generate leads for realtors. For example, Mike Opyd presented a show titled "Why Prospecting is Vital to a Realtor's Business." He emphasizes the importance of prospecting daily to generate leads.

min PLAY

**Why Prospecting is Vital to an Realtor's Business**

REAL-tor Advice with Mike Opyd

Careers

Listen on Apple Podcasts ↗

Realtors need to be prospecting every single day for new clients. It should be one of the first things they do every day as part of their daily to do list. Consistency is everything with prospecting. It's also the toughest part.

There are a lot of different ways to prospect. Agents need to find the ways they can do and also learn to think outside the box and try other things.

►For More Helpful Info for Realtors, Please Subscribe to my podcast https://anchor.fm/mike-opyd

#Realestate #Realestateagent #Realtor #Agents #Realtortips #Realtortricks #Realestatebroker #buyers #sellers #listings #buyersagent #listingagent #clients #helpingrealtors #chicagorealestate #chicagorealtor #chicagorealeatateagent #chicago [6]

**PROSPECT FOR PROPERTIES FOR YOU BUYERS EACH DAY.**

LOOK EVERYWHERE TO FIND AND SEND THEM PROPERTIES. DON'T JUST RELY ON SETTING UP AN MLS SEARCH. [7]

19. Re/Max NEXT directs its real estate agents and specifically coaches them to place *unsolicited cold calls* to consumers in order to generate business.

20. On Defendant Re/Max NEXT's Facebook page, Re/Max NEXT posted a link to an article about the importance of prospecting, including a list of 6 things a real estate agent

---

[5] *Id.*

[6] https://podcasts.apple.com/us/podcast/why-prospecting-is-vital-to-an-realtors-business/id1469445901?i=1000443445998

[7] https://www.instagram.com/p/By0MokvATzF/

should be doing *daily* to build business, emphasizing the importance of placing cold calls to consumers:

REMAX NEXT
March 20, 2019 ·

Prospecting is one of the most important tasks agents can do. Agents, you must prospect daily! Here are 6 things you should be doing every day to grow your business! #prospecting #realtor #realestate #realestateagent #helpingrealtors

https://www.inman.com/.../6-daily-prospecting-activities.../ [8]

21. The article described above directs real estate agents to generate lists of consumer phone numbers from services like Cole Realty Resources, Mojo, Vulcan7 and RedX, and to then place cold calls to those consumers:

## 2. Cold calling

Should you be interacting *cold*? Why yes! Yes, you should.

I get it — cold calling can be intimidating. It's frustrating dealing with constant rejection. Dialing property owners cold is a grind. But there is no more impactful way to reach masses and have multiple, meaningful real estate-related conversations on a daily basis.

Use a dialer and software to ramp up your effectiveness and efficiency. Numbers are abundant in the information age. Ask your title rep or contract services like Cole Realty Resources, Mojo/Vulcan 7 or REDX to find numbers, and start prospecting to fill today's pipeline as well as the pipeline of people who will be ready to buy or sell in six months, one year, two years and even longer out. [9]

22. In posting the link regarding prospecting and cold calling, Re/Max NEXT is actively ratifying the illegal telemarketing behavior that the article promotes.

---

[8] https://www.facebook.com/MeetRemaxNext/posts/632979250489227

[9] https://www.inman.com/2019/03/17/6-daily-prospecting-activities-new-agents-cant-afford-to-skip/?fbclid=IwAR0yZj2pP-e6sqLh1mtfuhbuqopyCb3DKbUKgm3uNLlcNZHs7HY5YxooayE

23. On November 3, 2020, Opyd hosted a training session – Conversation on Cold Calling with a Rockstar Realtor.

Mike Opyd
November 3, 2020 ·

Realtor Advice Show S1:E11 | Conversation on Cold Calling with a Rockstar Realtor

Cold Calling is an incredible way to generate more business. BUT it is also one of the most difficult to do. Good thing my guest on this week's show knows a thing or two on how you can cold call successfully!

In this week's episode, Teodora Choneva and I discuss how to get started cold calling and some of the most important things to consider.

I want to thank my co-host Teodora for being generous with her time and coming on!

#realtor #realestateagent #realestateadvice #realtoradvice #helpingrealtors #database #sales #marketing #realestatebroker #realtortips #realtors #success #entrepreneurship #business [10]

24. Teodora Choneva, the real estate agent who co-hosted the above training session with Opyd is a Re/Max NEXT real estate agent:

Teodora Choneva
Intro
Real estate broker at REMAX NEXT
[11]

25. The training session regarding cold calling was also referenced on the Re/Max NEXT Instagram page and is promoted by Mike Opyd.

[10] https://www.facebook.com/MikeOpyd
[11] https://www.facebook.com/tchoneva



[12]

26. As a result of the training and direction provided by Defendant Re/Max NEXT, Re/Max NEXT real estate sales persons like Defendant Marcy regularly engage in unsolicited cold calling in order to generate real estate business for Re/Max NEXT.

27. Defendant Marcy places calls using a pre-recorded voice system that leaves pre-recorded voicemails if a consumer does not answer a call, as per Plaintiff's experience.

28. In response to these unsolicited calls, Plaintiff Buscemi files this lawsuit seeking monetary and injunctive relief requiring the Defendants to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF BUSCEMI'S ALLEGATIONS

29. On February 25, 2021, Plaintiff received an unsolicited telemarketing call from Defendant Marcy, on behalf of Defendant Re/Max NEXT to her cell phone number from the phone number 773-345-6079 at 3:01 PM.

30. Plaintiff did not answer this call.

31. A pre-recorded voice message was left on Plaintiff's cell phone from Defendant Marcy, who identified himself as Tom Marcy stating:

[12] https://www.instagram.com/p/CHRKYFUBJu1/

"Hi, this is Tom Marcy with Re/Max. I was calling to see if you might be thinking of selling your house maybe now or in the near future. Please give me a call back at 773-345-6079. Hope you have a great day and I look forward to speaking with you. Thanks."

32. Plaintiff believes the voicemail was pre-recorded because of its generic nature and because it begins with a 3-second pause before any voice begins.

33. Plaintiff has never provided her phone number or consent to be called to Marcy or anyone at Re/Max NEXT.

34. The unauthorized solicitation telephone call that Plaintiff received from Marcy on behalf of Re/Max NEXT, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

35. Others have complained about receiving phone calls from the same phone number the Plaintiff received.[13]

36. Seeking redress for these injuries, Plaintiff, on behalf of herself and Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits telemarketing calls using a pre-recorded voice message.

## CLASS ALLEGATIONS

37. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Re/Max NEXT agent called (2) using a pre-recorded voice message, (3) on their cellular or residential telephone number.

38. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their

[13] https://www.reportedcalls.com/7733456066 and https://www.shouldianswer.com/phone-number/7733456138

subsidiaries, parents, successors, predecessors, and any entity in which either Defendants or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

39. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

40. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant Marcy placed a pre-recorded voice message call to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether Defendant Marcy's call to the Plaintiff and other consumers were made for telemarketing purposes;

(c) whether Defendant Re/Max Next is vicariously liable for the calling of its real estate salespersons;

(c) whether Defendants' conduct constitutes a violation of the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

41. **Adequate Representation**: The Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. The Plaintiff has no interests antagonistic to those of the Class, and the Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting

this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the Class.

42. **Appropriateness**: This class action is also appropriate for certification because the Defendants acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as wholes, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Pre-recorded Class)**

43. Plaintiff repeats and realleges the prior allegations of this Complaint and incorporates them by reference herein.

44. Defendants made an unwanted solicitation telephone call to Plaintiff and the other members of the Pre-recorded Class in an effort to sell Defendant Re/Max NEXT's real estate services.

45. These calls used artificial or pre-recorded voices.

46. These pre-recorded voice calls were made without the prior express written consent of Plaintiff and the other members of the Pre-recorded Class.

47. The Defendants have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii) and (b)(1)(B). As a result of Defendants' conduct, Plaintiff and the other members of the Pre-recorded Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff individually and on behalf of the Class, prays for the following relief:

48. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

49. An award of actual and/or statutory damages and costs;

50. An order declaring that Defendants' actions, as set out above, violate the TCPA;

51. An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

52. Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial.

Respectfully Submitted,

**MARIE BUSCEMI**, individually and on behalf of those similarly situated individuals,

DATED this 28th day of April, 2021.

By: /s/ *Juneitha Shambee*
Juneitha Shambee Esq.
Shambee Law Office, Ltd.
Evanston, IL 60202
Telephone: (773) 741-3602
juneitha@shambeelaw.com
Atty. No.: 6308145

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*